IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-HC-2169-FL


| | | |
|---|---|---|
| JAMARA WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LARRY DAIL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |


The matter comes before the court on respondent's motion for summary judgment (DE 8)

pursuant to Federal Rule of Civil Procedure 56(a) and petitioner's affidavit objecting to respondent's

citation method (DE 23). The issues raised were fully briefed and are ripe for adjudication. For the

following reasons, the court grants respondent's motion for summary judgment and overrules

petitioner's objection.

## STATEMENT OF CASE

On August 3, 2011, the State of North Carolina appointed attorney Robert McAfee to

represent petitioner in petitioner's North Carolina State criminal proceedings. (Resp't's Mem. Ex.

1, p. 55). Prior to trial, petitioner executed a waiver and consent which included the following

provisions:

      A.      I, Jamara Washington, the defendant in these cases, hereby
acknowledge the following information has been provided to
me prior to the call of these cases for trial:

1. My attorney is Robert J. McAfee, and he has represented me at trial of unrelated matters in February, 2012, as well as for other pending matters.

2. Robert McAfee has accepted a position as Assistant District Attorney with the office of the District Attorney, District 3B, effective July 25, 2012. Mr. McAfee has not yet started work as an Assistant District Attorney, but has accepted the position and is in the process of closing his practice and resolving his remaining cases prior to that date.

3. Mr. McAfee's acceptance of this position creates both actual and potential conflicts of interest for Mr. McAfee, given his dual status as a defense counsel and prosecutor.

4. These cases are currently set for jury trial during the Court's June 25, 2012, criminal term of court.

B. After having discussed this information with Mr. McAfee, and understanding my rights to conflict-free representation, I choose to waive all actual and potential conflicts of interest and consent to Mr. McAfee's continued representation of me through the conclusion of the jury trial of these cases. I understand that this waiver and consent cannot be withdrawn once the jury trial begins, and that this waiver is binding upon me for all purposes of trial, sentencing (if any) and appeal (if any). I understand that I am giving up a valuable right to conflict-free representation. I understand that any claim I could make regarding Mr. McAfee's performance as my counsel at the trial of these cases will likely be dismissed or denied as a result of my undertaking this waiver and giving this consent.

C. I further understand that I may be called upon to review this waiver and consent in open court before a Superior Court Judge, and that until that judge accepts this waiver and consent, I may withdraw it; however, once the judge accepts this waiver and consent, and the jury trial begins, I will not be permitted to withdraw this waiver and consent.

2

(Id. pp. 63-64). On June 12, 2012, the trial court conducted a hearing at which petitioner acknowledged his execution of the waiver and agreed to the continued representation by McAfee. (Pet. pp. 15-23).

On June 27, 2012, petitioner was found guilty after a jury trial in the Craven County Superior Court of two counts each of possession with intent to sell or deliver cocaine, and sale and delivery of cocaine. See State v. Washington, No. COA13-108, 2013 WL 5628824, at *1 (Oct. 15, 2013). Petitioner subsequently pleaded guilty, pursuant to a written plea agreement, to attaining the status of a habitual felon. (Pet. Attach. pp. 45-48). Petitioner then was sentenced to an aggregate term of 192-250 months imprisonment. (Id.) On October 15, 2013, the North Carolina Court of Appeals issued an unpublished opinion finding no error in petitioner's conviction and sentence. Washington, 2013 WL 5628824, at * 3. Attorney Marie H. Mobley represented petitioner on appeal. (Resp't's Mem. Ex. 2, p. 28).

On November 27, 2013, petitioner filed a petition for discretionary review in the North Carolina Supreme Court, which was denied on December 18, 2013. State v. Washington, 367 N.C. 284 (2013). On June 10, 2014, petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Craven County Superior Court. (Pet. Attach. pp. 65-90). On April 6, 2015, the State filed an answer to petitioner's MAR. (Resp't's Mem. Ex. 5). On April 20, 2015, the superior court denied petitioner's MAR. (Pet. Attach. p. 64). Eight days later, petitioner filed a *pro se* rebuttal to the State's answer to petitioner's MAR. (Id. pp. 91-98). Then, on May 12, 2015, the State filed an amended answer to petitioner's MAR. (Id. Ex. 6). On the same date, the superior court issued an order denying petitioner's MAR in an amended order, *nunc pro tunc* for its April 20, 2015, order. (Id. Ex. 7). On May 14, 2015, petitioner filed a *pro se* petition for a writ of certiorari in the North

3

Carolina Court of Appeals seeking review of the superior court's April 20, 2015, order denying his MAR. (Pet. Attach. pp. 99, 100-122). Certiorari was denied on June 1, 2015. (Id. p. 99).

On August 3, 2015, petitioner filed the instant *pro se* petition for a writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. Petitioner raised the following claims: (1) the trial judge was biased; (2) the government intruded into the attorney-client relationship; (3) the trial court did not conduct a proper inquiry into trial counsel's alleged actual conflict of interest; (4) the trial judge erred when he refused to allow petitioner's lawyer to cross-examine a confidential informant ("CI") regarding the CI's criminal history; (5) the prosecutor engaged in misconduct; (6) the trial judge permitted the State to present "inadmissible hearsay[;]" (7) the trial judge failed to grant petitioner's motion to dismiss for insufficient evidence; (8) ineffective assistance of trial counsel; and (9) ineffective assistance of appellate counsel.

On January 12, 2016, respondent filed a motion for summary judgment, arguing that petitioner is unable to establish a constitutional violation. Petitioner responded to the motion. In his response, petitioner stated that he did not receive a copy of respondent's exhibits. Accordingly, on August 15, 2016, the court directed respondent to re-send petitioner a copy of respondent's statement of facts and supporting exhibits, and allowed petitioner an opportunity to file a supplemental brief.

Respondent complied with the court's August 15, 2016, order on August 17, 2016. Petitioner subsequently filed both an affidavit objecting to respondent's citation method and a supplemental response brief.

4

**STATEMENT OF FACTS**

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

> The State presented evidence tending to show that Sergeant David Daniels ["Officer Daniels"] of the New Bern Police Department ("NBPD") enlisted a paid confidential informant on 16 March 2011 and 22 March 2011 to purchase drugs from defendant, who was suspected by the NBPD of selling drugs in the town. Prior to each purchase, officers of the NBPD searched the informant's person and vehicle and determined the informant did not have any contraband.
>
> On 16 March 2011 the informant called defendant, whom he knew as a former classmate in school, at a number given to him by defendant and asked to purchase cocaine from defendant. The two arranged to meet by a funeral parlor in the Pembroke section of town. The informant traveled to this location, walked over to a black vehicle defendant was driving, handed defendant $100 in cash, and received bags of cocaine in exchange. After defendant departed, the informant handed the bags to Officer Daniels, who was maintaining surveillance in an unmarked vehicle several hundred yards down the road. The bags were subsequently analyzed as containing 0.8 grams of cocaine. Officer Daniels ran a license plate check of the vehicle driven by the man who met the informant and determined that the vehicle belonged to Enterprise Leasings, a rental car agency.
>
> On 22 March 2011, the informant contacted defendant and arranged another transaction at a store near Trent Court in the Pembroke section of town. As the informant rode with Officer Barry Bryant of the NBPD to this location, he called the officer's attention to a parked white Dodge Charger vehicle. The officer parked his vehicle behind the Dodge Charger, which was occupied by only one person, identified by the informant as defendant. The informant exited the officer's vehicle and got into the front seat of the Dodge Charger. The informant returned and gave Officer David Welch a bag containing a substance subsequently analyzed as 1.7 grams of cocaine. Officer Daniels ran a license plate check of the Dodge Charger and determined that it was registered to Enterprise Leasing.
>
> An agent with Enterprise Holdings, a rental car agency, testified that defendant and his mother came to the agency on 12 March 2011 and rented a black Chevrolet Impala for a period expiring 18 March 2011. Defendant's mother paid for the rental. Defendant was listed as the only authorized driver. Defendant rented a Dodge Charger

automobile on 19 March 2011. The telephone number given by
defendant in the rental transaction matched the number given to the
informant.

Washington, 2013 WL 5628824, at *1-2.

## DISCUSSION

A.      Petitioner's Affidavit

On August 17, 2016, petitioner submitted an affidavit stating that "Respondent still has not

explained his Document case number exhibits which break down petitioner's exhibits."

(See (DE 22)). Petitioner appears to take issue with the manner in which respondent cited to

petitioner's exhibits in respondent's motion for summary judgment. As stated by respondent in his

motion for summary judgment, respondent cited to the court's docket entry numbers, instead of

petitioner's exhibit numbers, because petitioner did not number all the pages of his exhibits.

(Resp't Mem. p. 1). In addition to the docket entry numbers, respondent provided substantive

descriptions of the documents referenced in respondent's motion for summary judgment. Petitioner,

in turn, has made a full and detailed response to respondent's motion. Accordingly, to the extent

petitioner objects to respondent's citation of petitioner's exhibits in respondent's motion for

summary judgment, petitioner's objection is OVERRULED.

B.      Motion for Summary Judgment

1.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v.

Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden

of initially coming forward and demonstrating an absence of a genuine issue of material fact.

6

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407; see White v. Woodall, 134 S. Ct. 1697, 1702–07 (2014); Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam). A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

7

does not require that a state court cite to federal law in order for a
federal court to determine whether the state court's decision is an
objectively reasonable one, nor does it require a federal habeas court
to offer an independent opinion as to whether it believes, based upon
its own reading of the controlling Supreme Court precedents, that the
[petitioner's] constitutional rights were violated during the state court
proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a

determination of a factual issue made by a state court is presumed correct, unless rebutted by clear

and convincing evidence. See 28 U.S.C. § 2254(e)(1).

    2.    Analysis

        a.    Trial Judge Bias

In his first claim, petitioner alleges that his rights pursuant to the Due Process Clause of the

Fourteenth Amendment to the United States Constitution were violated because the trial judge was

biased. Petitioner asserts the following four specific instances in support of his bias claim: (1) the

trial judge (who also presided over a prior 2012 criminal trial involving petitioner) allowed Officer

Daniels to testify at the instant trial despite the fact that he committed perjury and fabricated

evidence against petitioner in a prior trial which ended in petitioner's acquittal on February 29,

2012; (2) the trial judge failed to explain the adverse effects of trial counsel's alleged conflict of

interest; (3) the trial judge allowed the same officer who testified at trial, which ended in petitioner's

acquittal on February 29, 2012, to testify against petitioner in the instant trial; and (4) the trial judge

"allowed multiple adverse affects of an actual conflict of interest." (Pet. p. 5). Petitioner raised his

judicial bias claims in his MAR and they were summarily denied.

"[T]he Due Process Clause clearly requires a fair trial in a fair tribunal . . . , before a judge

with no actual bias against the defendant or an interest in the outcome of his particular case." Bracy

8

v. Gramley, 520 U.S. 899, 905 (1997) (internal quotations and citations omitted).  However, not all claims of judicial bias rise to a constitutional level.  Rowsey v. Lee, 327 F.3d 335, 341 (4th Cir. 2003).  Courts "[o]rdinarily . . . presume that public officials have properly discharged their official duties."  Bracy, 520 U.S. at 909 (citation omitted).  "In order to prevail in a deprivation of due process claim, a [petitioner] must show a level of bias that made 'fair judgment impossible.'" Rowsey, 327 F.3d at 341 (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)).

Here, petitioner presents no evidence suggesting that the trial judge admitted perjured or fabricated evidence at either the instant or prior trial.  Petitioner further has not presented any evidence to reflect that Officer Daniels' testimony in the instant trial was inappropriate.  Further, petitioner had the opportunity to cross-examine any witnesses at trial to highlight any discrepancies between the recollection of the testifying informant and the notes and reports made by the investigating officers for each of the two drug buys that formed the basis of petitioner's convictions. (Resp't's Mem. Ex. 9, pp. 36-45; 61-69, 72-74, 110-117, 119-120, 136-141, 179-185, 202-204, 214-215).  The jury then considered the evidence presented and made credibility decisions with respect to the State's witnesses, to which this court must defer.  See Wensell v. McBride, No. 3:06–CV–4, 2007 WL 2220603, * 10, n. 9 (N.D.W. Va. July 27, 2007) (noting that federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and in weighing evidence), appeal dismissed, 2008 WL 539897 (4th Cir. 2008).

As for the attorney conflict of interest issue, the record reflects that the trial judge conducted a thorough pretrial hearing regarding counsel's alleged conflict of interest and determined that petitioner made a voluntary, knowing, and intelligent waiver of the alleged conflict.  (Pet. Attach. pp. 17-22).  To the extent petitioner alleges that the trial judge "allowed multiple adverse affects of

an actual conflict of interest," such allegations are unsupported by the record. Finally, petitioner

points to no evidence in the record indicating that the trial judge exhibited bias against petitioner,

and there is no evidence to support a finding that the trial judge influenced the jury to a degree that

made "fair judgment impossible." See Rowsey, 327 F.3d at 341. Petitioner's conclusory allegations

to the contrary are insufficient to warrant an evidentiary hearing for this claim. See Nickerson v.

Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on an

ineffective assistance claim — or, for that matter, on any claim — a habeas petitioner must come

forward with some evidence that the claim might have merit. Unsupported, conclusory allegations

do not entitle a habeas petitioner to an evidentiary hearing."), overruled on other grounds by, Yeatts

v. Angelone, 166 F.3d 255 (4th Cir. 1999).

Based upon the foregoing, the MAR court's decision did not result in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States. Likewise, the MAR court's ruling was not

based on an unreasonable determination of facts, in light of the evidence presented in the state-court

proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion summary judgment is

GRANTED as to this claim.

      b.     Attorney Conflict of Interest

Petitioner's second and eighth claims both relate to petitioner's contention that his counsel

was ineffective because he accepted a job with the District Attorney's office while representing

petitioner in petitioner's criminal proceedings. As a result, petitioner's first and eighth claims will

be considered together. Petitioner raised both claims in his MAR, and the superior court summarily

denied both claims.

10

In order to establish ineffective assistance of trial counsel, a petitioner must satisfy a two-pronged test. See Strickland v. Washington, 466 U.S. 668, 694 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. Id. at 688. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. For the second prong, a petitioner must show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).

"[E]very defendant has a constitutional right to the assistance of an attorney unhindered by a conflict of interest." Cuyler v. Sullivan, 446 U.S. 335, 356 (1980) (internal quotation and citation omitted). However, the mere "possibility of [a] conflict [of interest] is insufficient to impugn a criminal conviction." Id. at 350. To demonstrate an actual conflict of interest exists, a petitioner "must show that [his] interests diverge[d] [from his attorney's] with respect to a material factual or legal issue or to a course of action." Stephens v. Branker, 570 F.3d 198, 209 (4th Cir. 2009) (alterations in original) (quoting Gilbert v. Moore, 134 F.3d 642, 652 (4th Cir. 1998)) (some internal quotations marks omitted)). A petitioner additionally must establish "that the actual conflict of interest compromised his attorney's representation." Id. The mere fact that an attorney representing a defendant in a criminal action has future employment plans with a District Attorney's office does not create an actual conflict of interest. See Garcia v. Burnell, 33 F.3d 1193, 1199 (9th Cir. 1994),

11

cert. denied, 514 U.S. 1024 (1995); United States v. Horton, 845 F.2d 1414, 1419 (7th Cir. 1988) ("We will not indulge the presumption that a defense attorney who is being considered for a position as a United States Attorney is unable to represent a defendant in federal court to the best of his ability and with the defendant's best interests in mind.").

In this case, petitioner has not established that his interests diverged from his attorney's interests with respect to any material factual or legal issue, or to any course of action. Specifically, the record reflects that, prior to trial, petitioner executed a waiver of any conflict of interest due to his attorney's future employment plans with the District Attorney's Office. (Resp't's Mem. Ex. 1, pp. 64-65; Pet. Attach. p. 21). On the same date, the trial judge held a hearing regarding the conflict of interest. (Id.) At the hearing, the trial judge specifically went through the waiver with petitioner, and petitioner agreed to continue with trial. (Id.)

The record, additionally, reflects that petitioner's counsel actively participated in petitioner's trial. For instance, counsel filed a motion for discovery; and argued motions to reveal any deals or concessions made to the testifying informant, to have petitioner's name redacted from the laboratory reports introduced at trial to avoid any undue prejudice, and to cross-examine the testifying informant using prior convictions more than 10 years old. (Resp't's Mem. Ex. 9, pp. 8-10, 11-12, 13-18, 58-60). Counsel also moved to dismiss petitioner's charges at the conclusion of the State's evidence on the grounds of insufficient evidence. (Id. pp. 216-217). Finally, petitioner, himself, admitted, in the course of his guilty plea proceedings related to his habitual felon charge, that he was satisfied with his attorney's services. (Resp't's Ex. 1, p. 46). Based upon the foregoing, petitioner failed to establish the first prong of the attorney conflict of interest test–that his counsel acted unreasonably at any point in petitioner's criminal proceedings. See Holloway v. Arkansas, 435 U.S.

475, 483 n. 5 (1978) (finding that a defendant may waive the right to proceed with conflict-free counsel after a hearing before the trial court); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977) (expressing reluctance to second guess the tactics of trial lawyers) (citations omitted).

Even if petitioner could establish the first prong of the ineffective assistance of counsel test, he still would not be entitled to relief because he is unable to establish the second prong. Namely, petitioner has not presented any evidence to establish that but for counsel's alleged errors, the result of the proceedings would have been different. Because petitioner is unable to establish either prong of the ineffective assistance of counsel test, petitioner failed to establish a constitutional claim. Accordingly, the MAR court's denial of petitioner's ineffective assistance of counsel claims was neither contrary to, nor an unreasonable application of Strickland, and respondent's motion for summary judgment as to these claims is GRANTED.

> c.    Trial Court's Inquiry into Conflict of Interest

In his third claim, petitioner asserts that the trial court did not conduct a proper pretrial inquiry into his trial counsel's alleged actual conflict of interest. Petitioner raised this claim in his MAR, and the superior court summarily denied the claim.

"[A] trial court must inquire into a conflict of interest when it knows or reasonably should know that a particular conflict exists." Mickens v. Taylor, 240 F.3d 348, 357-358 (4th Cir. 2001) (citing Cuyler, 446 U.S. at 347)). As stated, the record reflects that the trial judge both recognized and conducted a thorough inquiry into the alleged conflict of interest at a pretrial hearing held on June 12, 2012. (Pet. Attach. pp. 18-21 ). During the hearing, petitioner's counsel disclosed that his starting date at the District Attorney's office was July 25, 2012. (Id. p. 20). Petitioner, additionally, acknowledged that he understood the nature of the conflict, and waived the right to raise the conflict

of interest issue on appeal or in an MAR.  (Id. p. 21).  Petitioner voiced no objection to McAfee representing him at trial, and instead expressed that he had "total faith" in McAfee.  (Id.)  Absent extraordinary circumstances, petitioner's solemn in-court representations should be deemed conclusive.  Via v. Superintendent, Powhatan Corr. Ctr., 643 F.2d 167, 171 (4th Cir. 1981); see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Little v. Allsbrook, 731 F.2d 238, 239-40 n.2 (4th Cir. 1984).

Based upon the foregoing, the trial judge met his burden of inquiry into the alleged conflict of interest.  Thus, the court finds that the state court proceedings were neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, nor was the state court decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).  Thus, respondent's motion for summary judgment as to this claim is GRANTED.

d.      Admissibility of Evidence

In his fourth and sixth claims, petitioner contests the trial court's decisions with respect to the admissibility of evidence at trial.  Petitioner's claims are as follows:  (1) the trial judge committed plain error when he refused to allow petitioner to cross-examine a testifying informant regarding the informant's prior convictions which were more than 10 years old; and (2) the trial judge committed plain error when he allowed the State to present "inadmissible hearsay" by admitting the CI's report after the CI testified.  The court of appeals adjudicated petitioner's first claim and found no error.  Likewise, the MAR court adjudicated petitioner's second claim and summarily denied the claim.

Generally, a state court's application of state evidentiary rules is not within the province of federal habeas review. See McNeill v. Polk, 476 F.3d 216, 222 (4th Cir. 2007). A state court ruling on an evidentiary issue is only cognizable in federal habeas corpus to the extent such rulings were so extreme as to result in a denial of a constitutionally fair proceeding. Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000). Here, petitioner has not presented any evidence that the trial court's ruling preventing petitioner's counsel from fully cross-examining the CI regarding his criminal history or permitting the State to present "inadmissible hearsay" were so extreme as to result in a denial of a constitutionally fair proceeding. Moreover, the court has reviewed the court of appeals and the MAR courts' adjudication of this issue and finds that the decisions were neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, nor was the state court decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). Thus, respondent's motion for summary judgment is GRANTED as to these claims.

e.      Prosecutorial Misconduct

In his fifth claim, petitioner asserts the following grounds in support of his claims for prosecutorial misconduct: (1) the State fabricated evidence and suborned perjury at petitioner's prior trial which resulted in acquittal; (2) the State manipulated an actual conflict of interest to adversely impact petitioner's right to a fair trial in the instant action; and (3) the State used Officer Daniels' testimony to fabricate evidence at petitioner's second trial in an effort to mislead the jury as to the credibility of the testifying informant. Petitioner raised these claims in his MAR, and they were summarily denied.

15

The court begins with petitioner's contention that the prosecutor fabricated evidence or knowingly used the perjured testimony of Officer Daniels, or any other witness, at trial. A petitioner is denied his right to due process when a prosecutor knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. See Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959). To show that a petitioner's due process rights were violated by the presentation of false evidence, a petitioner must show that the prosecution knew that the theory or evidence was false at the time of trial. See Napue, 360 U.S. at 269. "Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987). "A new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury." Giglio, 405 U.S. 154 (internal quotation omitted).

The record reflects that there were minor inconsistencies between the testimony of the ("CI") and Officer Daniels at trial, which include: whether the cocaine at issue was wrapped in paper or plastic; whether the recording device used in the drug buys was a key ring or button camera; the color of the cars used in the two drug buys; and whether the CI had any pending criminal charges. (Resp't's Mem. Ex. 9, pp. 28-29, 37-38, 52-54, 56, 61-70, 72-74, 82, 92-93, 107, 111-113). Petitioner has pointed to no evidence to suggest that the minor inconsistencies in the witnesses' statements are due to anything more than forgetfulness, or that the prosecutor knowingly used false or perjured testimony. See Baily v. Braxton, No. 3:12CV537, 2013 WL 4880846, at *8 (E.D. Va. Sept. 12, 2013) (stating that inconsistent statements "may be caused by forgetfulness, a misunderstanding of a question at a prior hearing, a refreshed recollection, perjury, or other reasons"), appeal dismissed, 579 F. App'x 208 (4th Cir. 2014). Moreover, the verdict sheets and

judgments petitioner submitted in an effort to establish that his February 29, 2012, not guilty verdict was the result of perjury or fabricated evidence fail to support such a contention. (Pet. pp. 6-9). Petitioner's counsel also was permitted the opportunity to fully cross-examine the confidential informant and Officer Daniels to highlight any inconsistencies. Finally, there is no evidence that the alleged false testimony could, in any reasonable likelihood, have affected the judgment of the jury.

As for petitioner's contention that the state manipulated an actual conflict of interest to influence the fairness of petitioner's trial, petitioner likewise fails to establish prosecutorial misconduct. As stated, petitioner knowingly waived the alleged conflict of interest arising from counsel's future employment with the District Attorney's office, and petitioner has presented no evidence to suggest that the state "manipulated" a conflict of interest. Rather, petitioner merely rests upon his conclusory allegations, which are insufficient to warrant habeas relief. See Nickerson, 971 F.2d at 1136. In any event, petitioner has not explained how the alleged prosecutorial misconduct caused him prejudice. Based upon the foregoing, the MAR court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the MAR court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion for summary judgment is GRANTED.

f.    Insufficient Evidence

In his seventh claim, petitioner alleges that there was insufficient evidence to convict him of selling cocaine or of possession of cocaine with the intent to sell and deliver. Petitioner raised

this claim in the court of appeals, and the court of appeals denied the claim on the merits reasoning as follows:

> Defendant also contends the court erred by denying his motion to dismiss for insufficient evidence. Upon a motion to dismiss, the court determines whether there is substantial evidence to establish each element of the offense charged and to identify the defendant as the perpetrator. State v. Earnhardt, 307 N.C. 62, 65–66, 296 S.E.2d 649, 651 (1982). Defendant argues the evidence is insufficient to identify him as the perpetrator of the offenses because no witness pointed to defendant and identified him in open court as the perpetrator.
>
> In ruling upon a motion to dismiss, the court must consider the evidence in the light most favorable to the State and give it the benefit of every reasonable inference that may be drawn from the evidence. State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). Evidence is substantial if it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). "Substantial evidence must be existing and real, but it does not have to exclude every reasonable hypothesis of innocence." State v. Lowery, 318 N.C. 54, 70, 347 S.E.2d 729, 740 (1986).
>
> At the call of the case for trial, the court informed the jury that the defendant is "Mr. Jamara Washington" and asked defendant to stand up so the jury could see him. The informant testified that the person who sold the cocaine to him was his former school classmate "Jamara Washington." We hold this evidence sufficient to identify defendant as the perpetrator. We reject defendant's argument.

Washington, 2013 WL 5628824, at *3.

The standard of review for claims of insufficient evidence on habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright v. West, 505 U.S. 277, 284 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979). Petitioner's challenge to the sufficiency of the evidence focuses on his contention that unspecified evidence was fabricated and that witnesses committed perjury at two separate trials involving the same police officer, Officer

18

Daniels, and the same judge. Petitioner, however, has not provided any evidence to suggest that he was convicted of the instant offenses through the use of perjured testimony or fabricated evidence. Further, as determined by the court of appeals, the record reflects that the State presented sufficient evidence that petitioner was guilty of the instant offenses. See Washington, 2013 WL 5628824, at *3. Thus, the court finds that the evidence presented at trial was sufficient that a rational trier of fact could find the essential elements of the crimes beyond a reasonable doubt.[1]

Based upon the foregoing, the court of appeal's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the court of appeal's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion for summary judgment as to this claim is GRANTED.

g.      Ineffective Assistance of Appellate Counsel

In his ninth claim, petitioner asserts that he received ineffective assistance of appellate counsel because his appellate counsel failed to argue his trial counsel's alleged actual conflict of interest on appeal. Petitioner raised this claim in his MAR, and the superior court summarily denied the claim.

As stated, the Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland, 466 U.S. at 686. To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's representation was objectively unreasonable and that

---

[1] To the extent petitioner asserts that he is actually innocent of his convictions, he has offered no evidence to support his claim. Conclusory allegations are insufficient to establish actual innocence. See Nickerson, 971 F.2d at 1136.

a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687–88). Appellate counsel is not required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Smith, 528 U.S. at 288. Reviewing courts must presume that in determining which issues to appeal, appellate counsel selected those issues most likely to afford relief. Pruett v. Thompson, 996 F.2d 1560, 2568 (4th Cir. 1993).

As explained above, petitioner's claim regarding the alleged actual conflict of interest involving his trial attorney is meritless and appellate counsel cannot be deemed ineffective for failing to raise meritless claims. Additionally, the record reflects that petitioner's appellate counsel independently reviewed the superior court record for petitioner's trial and discussed with petitioner which issues counsel deemed most likely to afford relief. (Pet. Attach, pp 59-63). Counsel may not be faulted for her strategic or tactical decisions with respect to which issues to pursue on appeal. Strickland, 466 U.S. at 681. Based upon the foregoing, petitioner has not demonstrated that his appellate counsel's representation was objectively unreasonable. Petitioner, additionally, has not presented evidence to establish that a reasonable probability exists that, but for the attorney's error, he would have prevailed on his appeal.

Based upon the foregoing, MAR court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the court of appeal's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the

state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion for summary judgment as to this claim is GRANTED.

C.       Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds

first to resolve the issue whose answer is more apparent from the record and arguments." <u>Slack</u>, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further.  Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, petitioner's objection to respondent's method of citation in respondent's motion for summary judgment is OVERRULED.  Respondent's motion for summary judgment (DE 8) is GRANTED.  To the extent petitioner's responsive filings could be construed as motions for summary judgment, such motions are DENIED. The certificate of appealability is DENIED.  The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 9th day of September, 2016.


LOUISE W. FLANAGAN
United States District Judge